RILEY SAFER HOLMES & CANCILA LLP
Yakov P. Wiegmann (CSB # 245783)
ywiegmann@rshc-law.com
456 Montgomery Street, 16th Floor
San Francisco, California 94104
Telephone:    (415) 275-8550
Facsimile:    (415) 275-8551

*Attorneys for Plaintiff*
A.B.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| A.B.<br><br>                 Plaintiffs,<br><br>        v.<br><br>U.S. DEPARTMENT OF JUSTICE, an agency of the Department of Homeland Security,<br><br>                 Defendant. | Case No.  1:19-cv-00598-CJN<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Freedom of Information Act, 5 U.S.C. § 552 |

## I.    INTRODUCTION

1.    This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to shed light on then-Attorney General Jeff Sessions and the Department of Justice's decision to direct the Board of Immigration Appeals ("BIA" or "Board") to certify Plaintiff A.B.'s ("Plaintiff") asylum case to him and vacate the Board's previous decision to grant asylum to Plaintiff.  Defendant Department of Justice has failed to substantively respond to Plaintiff's FOIA request within the legally mandated timeframe.

## II.    PARTIES

2.    Plaintiff A.B. is a Salvadoran woman who is in the process of appealing the

-1-         1:19-cv-00598-CJN

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

judgment on her asylum application. She is currently a resident of South Carolina.

3. Defendant Department of Justice is an agency within the meaning of 5 U.S.C. §552 (f), and is in possession and/or control of the records requested by Plaintiff which are the subject of this action. Defendant has its headquarters in Washington, D.C., and field offices all over the country.

### III.    JURISDICTION

4. This Court has federal subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). Because this action arises under the FOIA against an agency of the United States, this Court also has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346.

### IV.    VENUE

5. Venue lies in this District pursuant to 28 U.S.C. § 1391 and 5 U.S.C. § 552(a)(4)(B). Defendant resides in this District.

### V.    BACKGROUND

6. In 2014, the Board found for the first time in a precedent decision that women who are victims of domestic violence in their home countries can be eligible for asylum in the United States because they can show a "well-founded fear of persecution" based on "membership in a particular social group." *Matter of A-R-C-G- et al*, 26 I&N Dec. 388, 399 (BIA 2014). The lead respondent in *A-R-C-G* fled from Guatemala, where she had "suffered repugnant abuse by her husband" after marrying when she was seventeen. *Id*. After the couple's first child was born, her husband beat her weekly, breaking her nose. He threw burning paint thinner on her and raped her. *Id*.

7. The BIA was persuaded that the lead respondent also showed that the Guatemalan government would not protect her. *Id*. at 393. She went repeatedly to the police, but was told they would not interfere in a domestic dispute. *Id*. at 389. Once, when her husband bloodied her face, she called the police to their home, but they refused to arrest him. *Id*. Thus, the Board found that women who are survivors of severe domestic violence in their home countries can be eligible for asylum in the United States. *See, generally, id.*

8. Plaintiff, among others, fled to the United States seeking asylum on the basis that she is a survivor of severe domestic violence in her home country and the local government will do nothing to protect her.

## VI.   FACTS AND PROCEDURAL HISTORY

### A. Plaintiff's Asylum Application

9. Plaintiff, a Salvadoran woman, was brutalized by her husband in her home country for fifteen years. Her abuser subjected her to extreme physical, sexual, and emotional violence, from which the Salvadoran state was unable or unwilling to protect her, despite her efforts to secure protection. Fearing for her life and safety, Plaintiff fled to the United States.

10. Plaintiff still has family in El Salvador. Her husband has a significant history of extreme violence against Plaintiff. In addition to Plaintiff's husband potentially committing further physical violence against her, her husband may also be inclined to commit further violence against Plaintiff's daughter still in El Salvador—whom he has already harmed—should he become aware of Plaintiff's asylum efforts rooted in his abuse.

11. Plaintiff applied for asylum within the required one-year period, but her application was denied by Immigration Judge V. Stuart Couch. *Matter of A-B-*, Decision Denying Asylum Application, (Immig. Ct. Dec. 1, 2015).

12. Plaintiff appealed to the Board, which overturned the denial pursuant to *Matter of A-R-C-G- et al*, 26 I&N Dec. 388 (BIA 2014), *supra,* and sent the case back to Immigration Judge Couch with instructions to complete security checks and grant asylum. *Matter of A-B-*, (BIA Dec. 8, 2016).

13. Immigration Judge Couch held on to the case and refused to grant asylum as directed even after Plaintiff's security checks cleared. Instead, he attempted to "certify" the case back to the Board in a decision that defied the holdings of the higher tribunal. This act was procedurally improper and defective, as it failed to comprise a decision granting or denying Plaintiff's asylum application that could be certified to the Board—as later acknowledged by the Attorney General. *See Matter of A-B-*, 27 I&N Dec. at 321-22, n.2 (noting "procedurally defective" action by Immigration Judge Couch).

14. Then, on March 7, 2018, Attorney General Jefferson Sessions referred the Board's decision to himself "for review of issues relating to whether being a victim of private criminal activity constitutes a cognizable 'particular social group' for purposes of an application for asylum and withholding of removal . . . ." *Matter of A-B-*, 27 I. & N. Dec. 227 (A.G. 2018).

15. In the past, Attorneys General have used this "self-certification" authority pursuant to 8 C.F.R. § 1003.1(h)(1)(i) sparingly: under the Obama Administration, for example, this power was only used four times throughout both terms. By contrast, Sessions self-certified cases six times in less than two years, and has issued five decisions so far.[1]

16. Moreover, the Attorney General certification in Plaintiff's case was unusual, in that her case was not properly before the Board as required. The governing regulation, 8 C.F.R. §1003.1(h)(1)(i) provides a mechanism for the *Board* to "refer to the Attorney General for review of its decision all cases that [t]he Attorney General directs the Board to refer to him." In her briefing before then-Attorney General Sessions, Plaintiff argued that because Immigration Judge Couch's "certification" to the Board was defective, the Board never reacquired jurisdiction in her case and thus could not be directed to refer her case to Sessions. She further contended that Sessions' defective self-certification violated due process.

17. The Attorney General rejected Plaintiff's arguments against his certification authority, and ruled against Plaintiff on June 11, 2018. He vacated the Board's favorable decision in her case and remanded Plaintiff's case to the immigration judge. *Matter of A-B-*, 27 I&N Dec. 316 (A.G. 2018). In compliance with 8 C.F.R. § 1208.6(b), the Attorney General used a pseudonym (Plaintiff's initials) in issuing a published precedent decision in Plaintiff's case, so that Plaintiff's identity and safety would remain protected. *Id.*

18. The Attorney General's decision also overruled the BIA precedent in *A-R-C-G-*, which had recognized that people like Plaintiff – victims of domestic violence whom their governments could not protect – could show persecution on account of a "particular social group" and secure asylum or withholding of removal protection. *See id.* at 317 (overruling *Matter of A-*

---

[1] *See* How Jeff Sessions is Attacking Immigration Judges and Due Process Itself, David Hausman (Oct. 1, 2018), https://www.aclu.org/blog/immigrants-rights/deportation-and-due-process/how-jeff-sessions-attacking-immigration-judges

*R-C-G-*, 26 I. & N. Dec. 388 (BIA 2014)).

19. On October 10, 2018, Immigration Judge Couch issued a final order denying Plaintiff's application for asylum, withholding of removal, and relief under the Convention against Torture, as well as denial of her motion for recusal. Plaintiff filed a Notice of Appeal to the BIA on November 8, 2018 and her case remains pending. The BIA has not yet set a briefing schedule for the appeal.

### B. Plaintiff's FOIA Requests and the DOJ's Response

20. On March 26, 2018, Plaintiff made a FOIA request addressed to the DOJ's Mail Referral Unit. This request sought all records[2] that were prepared, received, transmitted, collected and/or maintained by DOJ that contain, discuss, refer to, or are related to the Attorney General's decision to certify to himself Plaintiff's asylum case. The request sought expedited treatment pursuant to 5 U.S.C. § 552(a)(6)(E)(ii) and 28 CFR § 16.5(e)(1). (A true and correct copy of Plaintiff's FOIA request to the DOJ for individual records on expedited basis is attached hereto as Exhibit A.)

21. On or around April 24, 2018, Plaintiff's counsel received a "partial response" from the DOJ's Executive Office of Immigration Review ("EOIR"). The EOIR stated that it received Plaintiff's FOIA request from the Justice Management Division, and was enclosing records responsive to the FOIA request. These records consisted or a single one-page e-mail, apparently announcing the Attorney General's self-certification decision to various DOJ personnel. (A true and correct copy of the DOJ's April 24, 2018 "partial response" is attached hereto as Exhibit B.)

22. Further, the "partial response" stated that "EOIR has forwarded 10 pages of the records to the Office of Information Policy (OIP) as a referral and OIP will provide you with a direct response regarding those records. EOIR has also forwarded 2 pages of the records to OIP

---

[2] The term "records" was defined to include all records or communications preserved in electronic or written form, including but not limited to correspondence, regulations, directives, documents, data, videotapes, audiotapes, emails, faxes, files, guidance, guidelines, standards, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, manuals, technical specifications, training materials or studies, including records kept in written form, or electronic format on computers and/or other electronic storage devices, electronic communications and/or videotapes, as well any reproductions thereof that differ in any way from any other reproduction, such as copies containing marginal notations.

for consultation, and EOIR will provide you with a response regarding those records when consultation is complete." Despite these representations, Plaintiff has received no substantive documents (other than the aforementioned single-page redacted email, and two cover sheets titled "Consult with OIP"). Plaintiff has not received the twelve pages that, according to the "partial response," EOIR had forwarded to OIP as a referral/for consultation.

23. On May 25, 2018 – two months after the initial request was made – the DOJ's FOIA officer directed Plaintiff's counsel to re-file her request directly with the EOIR, which they promptly did on May 30, 2018. The second request sought the following:

a. All records[3] that were prepared, received, transmitted, collected and/or maintained by the Department of Justice that contain, discuss, refer to, or are related to Plaintiff's asylum case within, between, or made by the following individuals and/or entities:
   i. Immigration Judge Stuart V. Couch;
   ii. The Executive Office for Immigration Review, including but not limited to its clerks, officials, and Director;
   iii. The Board of Immigration Appeals, including but not limited to its clerk's office;
   iv. Attorney General Jefferson Sessions;
   v. Internal, outside, or informal advisors of the Attorney General;
   vi. Employees of the Department of Justice.
b. These include but are not limited to any communications relating to the Attorney General's awareness of and consideration of any aspect of Plaintiff's asylum case. *See Matter of A-B-*, 27 I&N Dec. 227 (A.G. 2018).
c. This request covers the time period of December 8, 2016 to the date of search, up through and including the date of any searches that follow an initial search.

(A true and correct copy of Plaintiff's second FOIA request to the DOJ for individual records is attached hereto as Exhibit C.)

24. Like the initial request, the second request sought expedited processing under 28 C.F.R. § 16.5(d)(1) (both FOIA requests referred hereinafter as "Request"). Without this information, Plaintiff faced the loss of substantial due process rights in her case. Absent the requested information on the Attorney General's decision to certify the case to himself, Plaintiff faced the risk of being unable to fully raise and articulate due process concerns around the certification decision. Plaintiff pointed out that her asylum appeal was last sustained by the Agency, but that she now faced the requirement of having to re-litigate her merits case, which

---

[3] The term "records" was defined substantially the same way as in the first request.

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

itself implicates substantial due process concerns.

25. The DOJ on June 8, 2018 denied Plaintiff's request for expedited processing. (A true and correct copy of the DOJ's denial of Plaintiff's FOIA request on expedited basis is attached hereto as Exhibit D.) The letter denying expedited processing stated that the Request "has been assigned to an analyst in this Office and our processing of it has been initiated," but the DOJ failed to provide a response to the Request by the twenty-working-day deadline under 5 U.S.C. § 552(a)(6)(A)(i). (*See* Exhibit D.)

26. The DOJ further failed to issue a decision notifying Plaintiff that it was invoking an extension due to "unusual circumstances" under 5 U.S.C. § 552(a)(6)(B) and 28 C.F.R. 16.5(c).

27. Having heard nothing from the DOJ since the denial of expedited processing and the passing of the Agency's statutory deadline to respond to the Request, counsel for Plaintiff contacted Brittnie Baker, the DOJ's FOIA officer assigned to the Request, on July 11, 2018. Ms. Baker stated that the Request was on a "complex track," but could not provide an estimated time for the initial results. She promised to calculate that time and inform Plaintiff's counsel.

28. After Plaintiff's counsel followed up with her, Ms. Baker responded via email on July 30, 2018. She stated that "it is estimated that it will take at least 6 months for the search to be completed. It will then take another few months to review and process any responsive records that may be located, depending on the volume of records located in the search." Ms. Baker did not explain why the Request – which apparently did not merit "unusual circumstances" treatment – would require such a lengthy search period, not to mention a potentially even longer review period. (A true and correct copy of e-mail correspondence received from Ms. Baker is attached hereto as Exhibit E.)

29. Having received no communication from the DOJ regarding the processing of her Request after Ms. Baker's July 30, 2018 email, Plaintiff filed an administrative appeal due to the DOJ's failure to timely respond to the Request on September 28, 2018. The appeal challenged the DOJ's unreasonable delay, uncertain response date, and improperly lengthy estimate of the time required to respond to the Request. (A true and correct copy of the FOIA Request

Administrative Appeal is attached hereto as Exhibit F.)

30. On October 24, 2018, the DOJ sent a letter in response to Plaintiff's administrative appeal, claiming that because no "adverse determination" had been made, there was no action to consider on appeal. The DOJ did not set forth a reason for the delay or provide any sort of definitive response date. The response to Plaintiff's administrative appeal acknowledged that "the FOIA authorizes requesters to file a lawsuit when an agency takes longer than the statutory time period to respond," thereby conceding that Plaintiff had exhausted her administrative remedies. (A true and correct copy of the DOJ response to the FOIA Request Administrative Appeal is attached hereto as Exhibit G.)

31. The DOJ's unjustified delay in processing Plaintiff's FOIA request is unlawful and particularly improper given that the DOJ's proposed timeline to respond to the Request might not allow Plaintiff access to the requested records until after her appeal before the BIA has been adjudicated. This could prevent Plaintiff from fully articulating before the Board, and even potentially the federal Courts of Appeals, the due process and related issues arising from the then-Attorney-General's self-certification decision. As previously explained, Plaintiff has preserved her challenge to the authority and constitutionality of Sessions' self-certification of her case. Yet, despite issuing an adverse decision—which recognized procedural irregularities but nevertheless proceeded to reverse the Board's prior favorable decision—Sessions did not meaningfully explain the processes by which he selected Plaintiff's case for certification. Nor has the Agency provided responsive documentation, to which Plaintiff is entitled, that would shed light on the same. The Agency's failure to comply with the FOIA poses a substantial risk of undermining Plaintiff's due process rights in her asylum proceedings.

### VII.   CLAIM FOR RELIEF

#### A. Violation of the Freedom of Information Act, 5 U.S.C. § 552

32. Plaintiff re-alleges and incorporates, as fully set forth herein, each and every allegation contained in the above paragraphs.

33. The DOJ has failed to conduct an adequate search, has wrongfully withheld agency records requested by Plaintiff under the FOIA, and has failed to comply with the statutory

-8-

time limit for the processing of FOIA requests.

34. The DOJ failed to provide a response to Plaintiff's second FOIA Request by the twenty-working-day deadline under 5 U.S.C. § 552(a)(6)(A)(i). Nor did the DOJ issue a decision notifying Plaintiff that it was invoking an extension due to "unusual circumstances" under 5 U.S.C. § 552(a)(6)(B) and 28 C.F.R. 16.5(c). Even if the DOJ had invoked the ten-working-day extension under 5 U.S.C. § 552(a)(6)(B) and 28 C.F.R. 16.5(c), that period would have ended on July 12, 2018.

35. Ms. Baker's July 30, 2018 email does not constitute a proper determination under FOIA, because the DOJ did not "indicate within the relevant time period the scope of the documents it will produce and the exemptions it will claim with respect to any withheld documents." *See CREW v. FEC*, 711 F.3d 180, 182-83 (D.C. Cir. 2013).

36. The courts have found that "an agency's failure to comply with the FOIA's time limits is, by itself, a violation of the FOIA, and is an improper withholding of the requested documents." *Gilmore v. U.S. Dept. of Energy,* 33 F. Supp. 2d 1184, 1187 (N.D. Cal. 1998).

37. Plaintiff has exhausted the applicable administrative remedies with respect to wrongful withholding of the requested records.

38. Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested documents because the DOJ continues to improperly withhold agency records in violation of the FOIA. Plaintiff will suffer irreparable injury from, and have no adequate legal remedy for, the DOJ's illegal withholding of government documents pertaining to the subject of the Request.

39. Plaintiff is entitled to declaratory relief because an actual controversy exists regarding DOJ's failure to meet its obligations under FOIA.

### VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the DOJ as follows:

a. For declaratory relief declaring that the DOJ's failure to disclose the records requested by Plaintiff violates FOIA, 5 U.S.C. § 552;

b. For injunctive relief ordering the DOJ to expeditiously conduct an adequate search

-9-

for all records responsive to Plaintiff's FOIA requests; and to expeditiously and appropriately disclose, as soon as practicable and within a reasonable time not exceeding twenty days, all responsive, non-exempt records;

    c. For Plaintiff's reasonable attorney fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

    d. For such other relief as the Court may deem just and proper.

Dated: July 22, 2019

RILEY SAFER HOLMES & CANCILA LLP

By: /s/ Yakov P. Wiegmann

Yakov P. Wiegmann
ywiegmann@rshc-law.com
456 Montgomery Street, 16th Floor
San Francisco, CA 94104
Telephone: (415) 275-8550
Facsimile: (415) 275-8551
*Attorneys for Plaintiff*
A.B.

4843-9967-6060, v. 4

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF