UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

A.B.,

       *Plaintiff*,

  v.

U.S. Department of Justice,

       *Defendant*.

Civil Action No. 1:19-cv-00598 (CJN)

## MEMORANDUM OPINION

In this suit under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, Plaintiff A.B. seeks to compel the Department of Justice to release records pertaining to then-Attorney General Sessions's decision to certify A.B.'s asylum case to himself. *See generally* Am. Compl., ECF No. 12. A.B. disputes only DOJ's withholding of certain materials as protected by the deliberative process privilege. Because DOJ has adequately justified those withholdings and produced non-exempt segregable information, the Court grants summary judgment for DOJ in full.

### I.  Background

A.B. is a Salvadoran woman currently appealing the denial of her asylum application. Am. Compl. ¶ 2. She fled to the United States after experiencing abuse and violence from her husband. Am. Compl. ¶ 9. In 2015, an immigration judge denied her asylum application. Am. Compl. ¶ 11. She appealed to the Board of Immigration Appeals, which reversed and remanded to the immigration judge with instructions to complete security checks and grant asylum. Am. Compl. ¶ 12. The immigration judge instead attempted to "certify" the case back to the Board, a step that the Attorney General later described as "procedurally defective." Am. Compl. ¶ 13.

1

In March 2018, then-Attorney General Sessions certified the Board's decision to himself. Am. Compl. ¶ 14. The Attorney General ultimately rejected A.B.'s challenge to his certification authority, vacated the Board's decision, and remanded A.B.'s case to the immigration judge. Am. Compl. ¶ 17. In October 2018, the immigration judge issued a final order denying A.B.'s asylum application. Am. Compl. ¶ 19. A.B. timely appealed to the Board; her appeal remains pending. Pl.'s Opp'n to Def.'s Mot. Summ. J. ("Pl.'s Opp'n") at 4, ECF No. 30.

After the Attorney General certified A.B.'s case to himself, A.B. submitted a FOIA request to DOJ for "all records that were prepared, received, transmitted, collected and/or maintained by DOJ that contain, discuss, refer to, or are related to the Attorney General's decision to certify to himself Plaintiff's asylum case." Am. Compl. ¶ 20 (internal footnote omitted). A.B. also submitted a second request to DOJ's Executive Office of Immigration Review ("EOIR") that sought similar records.[1] Am. Compl. ¶ 23.

A.B. filed this suit on March 6, 2019. *See generally* Compl., ECF No. 1; *see also* Am. Compl. Following several disputes between the Parties regarding the adequacy and timing of DOJ's searches, *see* Pl.'s Opp'n at 7–8, DOJ produced over 1,000 pages of responsive records to A.B. in January 2020, Pl.'s Opp'n at 8. But DOJ also redacted or withheld completely certain records pursuant to FOIA Exemptions 5, 6, and 7(C). Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s Mem.") at 1, ECF No. 28-2.

---

[1] A.B.'s second FOIA request sought "[a]ll records that were prepared, received, transmitted, collected and/or maintained by [DOJ] that contain, discuss, refer to, or are related to [A.B.'s] asylum case within, between, or made by the following individuals and/or entities:
- [The immigration judge who denied her asylum application];
- [EOIR], including but not limited to its clerks, officials, and Director;
- [The Board], including but not limited to its clerk's office;
- Attorney General Jefferson Sessions;
- Internal, outside, or informal advisors of the Attorney General;
- Employees of the Department of Justice."

*See generally* Am. Compl. Ex. C, ECF No. 12-3 (internal footnote omitted).

The Parties' Cross-Motions for Summary Judgment have substantially narrowed the issues in dispute. *See generally* Def.'s Mem.; Pl.'s Opp'n. DOJ moves for summary judgment regarding its withholding of materials under the deliberative process privilege, attorney-client privilege, or work product doctrine, as well as its invocation of Exemptions 6 and 7(C) to protect personal identifying information of government officials and employees. Def.'s Mem. at 2. In her papers, A.B. challenges only the materials that have been withheld on the basis of the deliberative process privilege. Pl.'s Opp'n at 2.

## II.     Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "FOIA . . . mandates that an agency disclose records on request, unless they fall within one of nine exemptions." *Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011). "FOIA mandates a 'strong presumption in favor of disclosure,'" *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991))—so much so that FOIA "expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter *de novo*,'" *U.S. Dep't of Justice v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

To prevail on an exemption claim, an agency must demonstrate "that each document that falls within the class requested . . . is wholly exempt from the Act's inspection requirements." *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980) (internal quotation marks omitted) (quoting *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)). Although the Court examines the facts and inferences in the light most favorable to the requester, an agency may satisfy its burden to prove the applicability of an exemption by affidavit. *Larson*

*v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009).  Summary judgment is warranted when the affidavits "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Id.* (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)).  Declarations supporting an agency's motion for summary judgment "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *Pinson v. U.S. Dep't of Justice*, 160 F. Supp. 3d 285, 293 (D.D.C. 2016) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).  Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears "logical" or "plausible." *Larson*, 565 F.3d at 862 (quoting *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007)).

### A. The Unchallenged Withholdings

As a preliminary matter, A.B. does not challenge DOJ's withholding of materials under Exemptions 6 or 7(C), or under Exemption 5 for information protected by the attorney-client privilege or attorney-work product doctrine.  *See generally* Def.'s Mem.; *see also* Pl.'s Opp'n at 2 ("A.B. limits this Opposition and Cross-Motion for Summary Judgment to the redactions and withholdings DOJ asserted under the deliberative process privilege of Exemption 5.").

"[A] motion for summary judgment cannot be 'conceded' for want of opposition." *Winston & Strawn, LLP v. McClean*, 843 F.3d 503, 505 (D.C. Cir. 2016).  But in a FOIA case, the Court is not required to assess whether the government has justified each and every withholding even if the requester does not contest that withholding. *Shapiro v. Dep't of Justice*, 239 F. Supp. 3d 100, 106 n.1 (D.D.C. 2017).  Instead, when a FOIA requester responds to an agency's motion for summary judgment "without taking issue with the government's decision to withhold or to redact

documents, the Court can reasonably infer that the FOIA requester does not seek those specific records or information and that, as to those records or information, there is no case or controversy sufficient to sustain the Court's jurisdiction." *Id.*

The briefs are clear: DOJ asserts that its redactions and withholdings are justified under Exemptions 5, 6, and 7(C), Def.'s Mem. at 2, and A.B. limits her current arguments to the government's invocation of the deliberative process privilege, Pl.'s Opp'n at 2. That is therefore the only issue that must be resolved here.

### B.  The Deliberative Process Privilege

FOIA Exemption 5 permits an agency to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). An agency may withhold material under Exemption 5 if the material would normally be privileged in the civil discovery context, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975), including documents that fall under an agency's deliberative process privilege, *Hall & Assocs. v. EPA*, 956 F.3d 621, 624 (D.C. Cir. 2020).

The purpose of the deliberative process privilege is to improve agency decision-making by "protecting open and frank discussion" among government officials. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001) (citing *Sears*, 421 U.S. at 151) ("[O]fficials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news."). "The privilege protects 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015) (quoting *Sears*, 421 U.S. at 150).

To qualify for the deliberative process privilege, material must be both "predecisional" and "deliberative." *Elec. Frontier Found. v. U.S. Dep't of Justice*, 739 F.3d 1, 7 (D.C. Cir. 2014). Material is considered predecisional "if it was generated before the adoption of an agency policy." *Pub. Citizen, Inc. v. Off. of Mgmt. & Budget*, 598 F.3d 865, 874 (D.C. Cir. 2010) (quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006)). And a document is "deliberative" if it "is a part of the agency give-and-take—of the deliberative process—by which the decision itself is made." *Abtew*, 808 F.3d at 899 (quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975)). An agency can establish that documents are "deliberative" if they identify "what deliberative process is involved, and the role played by the documents in issue in the course of that process," *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980) (citing *Vaughn*, 523 F.2d at 1146), but there is no requirement that the agency identify a specific decision in connection with each document, *see Sears*, 421 U.S. at 151 n.18 ("Our emphasis on the need to protect pre-decisional documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared.").

### III.   Analysis

#### A.  The Hamilton Emails

A.B.'s briefs focus exclusively on a December 6, 2017 email thread between Gene Hamilton in the Office of the Attorney General ("OAG") and Sarah Harris in the Office of Legal Counsel (the "Hamilton Emails"). *See* Pl.'s Opp'n at 12–16. A.B. argues that these emails show that the Attorney General had made the decision to certify her case to himself by December 6, 2017, and therefore that any document created after that date cannot be "predecisional." Pl.'s Opp'n at 12–14. In particular, A.B. points to an email from Hamilton to Harris stating "the

6

Attorney General will be certifying a number of cases from EOIR for his review . . . . I would like to consult with OLC about the manner in which he does so." Pl.'s Opp'n at 12–13 (quoting Pl.'s Opp'n Ex. A. at 3, ECF No. 34). The email includes "a description of redacted cases and a redacted 'Path Forward' for each case." *Id.* at 13. Harris responded by asking two questions; Hamilton provided clarification as to the first and stated it was easier to discuss the second in person. *Id.* A.B. claims that the statement that the Attorney General "will be certifying" the cases indicates that he had already decided to do so and was merely asking OLC "about *how* to rationalize certifying Plaintiff's case." *Id.* And although the Attorney General's Order certifying A.B.'s case to himself wasn't issued until March 7, 2018, A.B. contends that the Order was merely the formal enactment of a decision that had been made months ago. *Id.* at 14.

DOJ responds that this reading is overly formalistic and misconstrues what is, in context, "merely the first step in an ongoing deliberative process before a final decision on the certification of [A.B.'s] asylum case was reached by the Attorney General." Def.'s Reply at 5, ECF No. 36 (citing 2d Brinkmann Decl. ¶ 7, ECF No. 36-1). DOJ contends that the actual decision was the March 7 Order, and that no final decision had been made about A.B.'s case until then. *Id.* at 6. DOJ points to a different case discussed in the Hamilton Emails that the Attorney General never certified for his review, as well as a third case that was resolved in a different manner than the "path forward" proposed by Hamilton, as evidence of the "ongoing deliberative process" regarding the certification of A.B.'s case. *Id.* at 5 (citing 2d Brinkmann Decl. ¶ 6). DOJ also points to a March 2, 2018 memorandum from Hamilton recommending that the Attorney General certify A.B.'s case to himself and seeking "the Attorney General's approval of the Proposed Attorney General Order" in A.B.'s matter. *Id.* at 6 (citing 2d Brinkmann Decl. ¶ 7).

7

When determining whether a document is predecisional deliberation or an agency's final decision, courts look for "action taken by the responsible decisionmaker in an agency's decision-making process which has the practical effect of disposing of a matter before the agency." *Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598, 602 (D.C. Cir. 2001) (quoting *Bristol-Meyers Co. v. FTC*, 598 F.2d 18, 25 (D.C. Cir. 1978)).  In some circumstances, a record that is not an official final decision is still, in effect, a final decision and therefore not protected by the deliberative process privilege.  This doctrine, the so-called "secret law doctrine," permits the public to discover the reasons that supplied the basis for an agency policy actually adopted.  *See Sears*, 421 U.S. at 152; *see also Coastal States*, 617 F.2d at 867 ("[A]n agency will not be permitted to develop a body of 'secret law,' used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege because it is not designated as 'formal,' 'binding,' or 'final.'").

Records that courts consider "secret law" are typically a superior officer's instruction to his or her subordinates who are responsible for actually implementing the policy.  *See Elec. Frontier Found.*, 739 F.3d at 9 (explaining that the secret law doctrine applies when a document represents "a conclusive or authoritative statement of its policy, usually a higher authority instructing a subordinate on how the agency's general policy applies to a particular case, or a document that determined policy or applied established policy").  Such documents usually deal with "orders and interpretations which [the agency] actually applies in cases before it," *Sterling Drug, Inc. v. FTC*, 450 F.2d 698, 708 (D.C. Cir. 1971), or which are "routinely used by agency staff as guidance," *Coastal States*, 617 F.2d at 869.  For example, the documents at issue in *Coastal States* were "regional counsel opinions" that "were routinely used by agency staff as guidance in conducting their audits, and were retained and referred to as precedent." *Coastal States*, 617 F.2d

8

at 869.  On the other hand, internal memoranda making recommendations or presenting options reflect the essence of internal deliberations that the deliberative process privilege was designed to protect.  *See Sears*, 421 U.S. at 150–52.  And documents in which a decisionmaker seeks advice on legal issues before the agency fall squarely within the protection of the deliberative process privilege.  *See Elec. Frontier Found.*, 739 F.3d at 8–9 (citing *Murphy v. Dep't of Army,* 613 F.2d 1151, 1154 (1979)).[2]

At first glance, the Hamilton Emails could be read as if the Attorney General had decided, by December 6, 2017, to certify the listed cases to himself.  But in context, the emails are better construed as a communication from OAG to OLC seeking OLC's input and guidance on several issues, including whether the Attorney General should certify the listed cases to himself.[3]  After all, the Attorney General did not sign an actual order certifying A.B.'s case to himself until March 7, 2018, and only after receiving a memorandum from Hamilton recommending that certification, which would have been highly unusual if the Attorney General had already certified the case to himself three months earlier.  Moreover, A.B.'s case was on the same list as one case that the Attorney General never certified for his review and another case that was resolved in a different manner than the "path forward" proposed by Hamilton.  Def.'s Reply at 5 (citing 2d Brinkmann Decl. ¶ 6).  To be sure, it is conceptually possible that the Attorney General could have decided in December 2017 *whether* to certify A.B.'s case, and thereafter to have sought advice only on *how*

---

[2] A.B. further contends that the Attorney General's decision not to follow the proposed "path forward" for other cases does not mean that he hadn't made a final decision to certify A.B.'s case to himself by December 6, 2017, arguing that final decisions can be changed.  Pl.'s Reply at 2, ECF No. 38.  It is unclear to the Court how a final decision which has the "practical effect of disposing of a matter before the agency," *see Rockwell Int'l Corp.*, 235 F.3d at 602, could be changed as casually as A.B. suggests.  In any event, the Court is unpersuaded by this argument for the reasons discussed *infra* Section III.A.

[3] DOJ has asserted just that:  "[The Hamilton Emails, and other documents between December 6, 2017, and March 7, 2018,] are predecisional because they were created prior to the development of a final decision by [DOJ and] the final decisions are the Attorney General's specific decisions regarding each asylum claim:  whether or not to refer a case to himself, the specific content of a final signed order or opinion, as well as the specific arguments articulated in these final decisions."  2d Brinkmann Decl. ¶ 6 (quoting 1st Brinkmann Decl. ¶ 37, ECF No. 28-3).

to do so. But there is no indication—other than one sentence in an informal email sent between OAG and OLC—that that is what happened here. The Court therefore concludes that, based on the present record, the Attorney General did not make a final decision regarding whether to certify A.B.'s case to himself until he signed the Order to do so on March 7, 2018.

Even if the disputed records are predecisional, they must also be deliberative to qualify for protection under the deliberative process privilege. A.B. contends that the Hamilton Emails are not deliberative because they were sent from a superior to a subordinate, and were actually "an order from Attorney General Sessions to assist in carrying out his decision." Pl.'s Opp'n at 15–16. DOJ responds that the Hamilton Emails "reflect an ongoing deliberative process that ended with a decision by the Attorney General in March 2018 to certify [A.B.'s] asylum case to himself," Def.'s Reply at 7–8 (citing 2d Brinkmann Decl. ¶ 9), emphasizing that Hamilton wrote that he "would like to consult with" OLC about the listed cases, *id.* at 8.

A.B.'s argument here, like her other arguments, relies on an overly formalistic interpretation of the Hamilton emails. The principal role of OLC is "to assist the Attorney General [by providing] advice and analysis with respect to very difficult and unsettled issues of law," Def.'s Mot. Ex. H ¶¶ 3, 5, ECF No. 28-4; OAG reached out to OLC to perform that function. The Hamilton Emails were written as a part of the process by which the Attorney General came to a final decision and had no "operative effect" (as proven by the fact that the Attorney General did not certify one of the cases in the emails to himself). *See Abtew*, 808 F.3d at 899 (quoting *Sears*, 421 U.S. at 160). As for A.B.'s arguments regarding DOJ's chain of command, the Court concludes that they are irrelevant to determining whether the Hamilton Emails are deliberative because a decisionmaker's communications to a subordinate, when seeking advice on whether to

10

make a decision, are also protected by the deliberative process privilege. *See Elec. Frontier Found.*, 739 F.3d at 8–9 (citing *Murphy*, 613 F.2d at 1154).

The Court therefore concludes that the Hamilton Emails were part of an ongoing discussion between OAG and OLC involving intra-agency legal advice prior to an agency decision on the issues involved and fit squarely within the deliberative process privilege. *See Elec. Frontier Found.*, 739 F.3d at 8–9.

### B. Material Withheld Under Deliberative Process Privilege

Having addressed A.B.'s specific arguments regarding the Hamilton Emails,[4] the Court must still evaluate whether DOJ has provided "justifications for nondisclosure with reasonably specific detail [that] demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson*, 565 F.3d at 862 (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)). The Court therefore examines DOJ's justifications for withholding each of the documents redacted or withheld under only the deliberative process privilege. For the sake of clarity, the Court addresses the justifications in six groups, as organized by DOJ in its Motion. *See* Def.'s Mem. at 6.

#### 1. Group I

Group I contains "portions of formal memoranda prepared by a Counselor to the Attorney General in which he makes substantive recommendations regarding particular actions to be taken in the *Matter of A.B.*, including detailed analyses of case precedent, opinions, and assessment of

---

[4] A.B.'s arguments relating to the deliberative process privilege are based entirely on those emails. *See* Pl.'s Opp'n at 12–16; discussion *infra* Section III.A. It is not entirely clear whether A.B. challenges only the government's withholding of those particular emails, or more broadly the government's withholding of all records under the deliberative process privilege. For the sake of completeness, the Court addresses all documents withheld pursuant to that privilege.

11

the factual circumstances of the case." Def.'s Mem. at 7 (citing 1st Brinkmann Decl. ¶ 26, ECF No. 28-3). The memoranda provide an "evaluative recommendation" on legal questions in the case for the Attorney General's consideration. *Id.* DOJ contends that the memoranda are predecisional because they precede a final decision by the Attorney General, 1st Brinkmann Decl. ¶ 27, and deliberative because they consist of legal advice regarding the issues in the cases, *id.* ¶ 28.

### 2. Group II

Group II includes draft memoranda, orders and opinions, and Office of Public Affairs statements (all of which were withheld in full) and discussions regarding the draft statements. Def.'s Mem. at 8. DOJ explains that the withheld draft memorandum contains a Counselor's recommendation to the Attorney General regarding an interim decision the Attorney General needed to make in A.B.'s case. *Id.* (citing 1st Brinkmann Decl. ¶ 32). The orders and opinions in Group II were "draft versions of specific interim orders issued by the Attorney General . . . or draft versions of [his final opinion]." *Id.* Group II also includes a draft Office of Public Affairs statement regarding A.B.'s case, *id.*, and deliberative discussions consisting of email chains with the draft statements and officials' suggestions about the same, *id.* at 9 (citing 1st Brinkmann Decl. ¶ 32). DOJ contends that these documents are predecisional because they were drafts created prior to the final, approved versions of the orders, opinions, and statements at issue, *id.* (citing 1st Brinkmann Decl. ¶ 33), and deliberative because they reflect "edits, mark-ups, and additions, as well as reactions among agency officials to those proposed edits," *id.*

### 3. Group III

DOJ also redacted internal deliberations regarding the Attorney General's review of A.B.'s case. Def.'s Mem. at 9 (citing 1st Brinkmann Decl. ¶ 36). The deliberations discuss possible

12

responses to specific issues and filings, suggested changes to draft documents, and review of specific decisions and drafts.[5]  *Id.*  DOJ asserts that the Group III withholdings are predecisional because they were made before any final decisions by the Attorney General[6] and deliberative because they contain subordinates' recommendations to the Attorney General regarding specific decisions.  *Id.* at 10 (citing 1st Brinkmann Decl. ¶ 37).

### 4.  Group IV

Group IV consists of a variety of documents that were produced in part and redacted because certain portions were unresponsive or exempted under the deliberative process privilege.  *See* Def.'s Mem. at 10–11.  Included in Group IV are discussions about (1) proposed topics for the Attorney General to discuss at the Judicial Conference Meeting, (2) issues under consideration by OAG that are not public and unrelated to A.B.'s case, (3) the processing of specific FOIA requests and what information to release in response to those requests, (4) official characterization and release of information regarding the Attorney General's decisions in asylum cases, (5) analysis of immigration case law, and (6) information to include in an interagency report drafted in response to an executive order.  *Id.* (citing 1st Brinkmann Decl. ¶ 40).  DOJ contends that the Group IV withholdings are predecisional and deliberative because they consist of "evaluative discussions, proposed topics and information for inclusion in official reports or public statements, or ongoing reflections on legal issues."  *Id.* at 11 (citing 1st Brinkmann Decl. ¶ 41).

---

[5] DOJ also contends that some Group III redactions were made for deliberations that did not concern A.B.'s case. Def.'s Mem. at 9–10 (citing 1st Brinkmann Decl. ¶ 36).

[6] DOJ identifies the relevant Attorney General decisions as those regarding "each asylum claim, namely whether or not to refer a case to himself, the specific content of a final signed order or opinion, as well as the specific arguments articulated in these final decisions." Def.'s Mem. at 10 (citing 1st Brinkmann Decl. ¶ 37).

### 5. Group V

The single record in Group V is an email exchange between DOJ and a White House official who requested information on Board decisions that the Attorney General had certified to himself. Def.'s Mem. at 11–12 (citing 1st Brinkmann Decl. ¶ 44). DOJ asserts that the email is predecisional because it consists of discussions held prior to a final decision or action by the White House and deliberative because it contains the collaborative process between DOJ and the White House in which White House staff gathered specific information from DOJ regarding pending matters of concern to the Executive Branch. *Id.* (citing 1st Brinkmann Decl. ¶¶ 44, 45).

### 6. Group VI

Group VI consists of attachments to an email exchange among DOJ officials. Def.'s Mem. at 12 (citing 1st Brinkmann Decl. ¶ 48). The attachments are examples of decisions by Attorneys General in prior asylum cases that were provided to the Attorney General in his consideration of A.B.'s case. *Id.* DOJ contends that the case samples are predecisional because they relate to the Attorney General's review of other cases as part of the process leading up to his final decision in A.B.'s case and deliberative because they reflect "the thought processes and judgment of [DOJ] officials as they canvass and cull from the wide spectrum of available past decisions by Attorneys General, analyze those decisions, and select those considered most relevant." *Id.*

\* \* \*

DOJ's justifications for its withholdings under Exemption 5's deliberative process privilege establish "what deliberative process is involved, and the role played by the documents in issue in the course of that process." *Coastal States*, 617 F.2d at 868. Its justifications are reasonably detailed and demonstrate that withholding was proper for each of the challenged

documents. The Court therefore concludes that DOJ has sufficiently justified its deliberative process privilege withholdings under Exemption 5.

Finally, the Court must determine whether DOJ has fulfilled its obligations to disclose non-exempt portions of responsive documents. FOIA mandates that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Even when parts of a document are protected by a FOIA exemption, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). Courts have an "affirmative duty" to consider whether any non-exempt segregable material can be released. *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007). Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material, *Boyd v. Crim. Div. of the U.S. Dep't of Justice*, 475 F.3d 381, 382 (D.C. Cir. 2007), and the Court may rely on agency affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated, *see Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996). For material withheld pursuant to the deliberative process privilege, even factual information may be protected when it reveals the agency's deliberations. *See, e.g.*, *Horowitz v. Peace Corps*, 428 F.3d 271, 277 (D.C. Cir. 2005) (protecting information where decisionmaker's "thought processes are woven into the document to such an extent" that any attempt at segregating out information would reveal agency deliberations).

Here, DOJ has provided detailed reasoning for each withholding under the deliberative process privilege. For documents withheld in their entirety, DOJ has represented that it "thoroughly reviewed each of the records and withheld from disclosure only that specific

information which would reveal [DOJ's] predecisional decisionmaking process." Def.'s Mem. at 23 (citing 1st Brinkmann Decl. ¶¶ 35, 56). As for documents produced in part, DOJ asserts that it "conducted a line-by-line review" of the responsive records and withheld only those portions that would reveal "specific deliberations and recommendations." *Id.* at 24. The Court therefore finds that DOJ has complied with its obligations to produce any non-exempt information that may reasonably be segregated for release.

## IV.   Conclusion

DOJ has demonstrated that it properly withheld documents under Exemption 5's deliberative process privilege. The Hamilton Emails do not indicate otherwise. Because the Court also concludes that DOJ has provided reasonably detailed justifications for its withholdings and produced any non-exempt information that may reasonably be segregated, the Court grants summary judgment for DOJ in full. An Order will be entered contemporaneously with this Memorandum Opinion.

DATE: March 19, 2021

CARL J. NICHOLS
United States District Judge